# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

BILLY N. CULBERTSON,                                                                                    PLAINTIFF
ADC #076385

                                                  4:10-cv-01464-KGB-JTK

JIM ROBERSON, et al.                                                                                   DEFENDANTS

## PROPOSED FINDINGS & RECOMMENDATION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any

documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **DISPOSITION**

An Evidentiary Hearing was held in this case before the Court on June 12, 2012. Following a presentation of the testimony of the parties and submission of exhibits, the Court enters the following proposed findings and recommendation.

**I.     Introduction**

Plaintiff Billy Culbertson, a state inmate incarcerated at the East Arkansas Regional Unit of the Arkansas Department of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging deliberate indifference to his serious medical and mental health needs while he was incarcerated at the Lonoke County Jail from September, 2006, until January, 2008. The Court previously dismissed Defendant Baker from his complaint for failure to state a claim (Doc. No. 21), and later dismissed Plaintiff's claims relating to his placement on suicide watch and failure to protect (Doc. No. 61). Plaintiff's remaining claim is that Defendants Roberson, Munnerlyn, and Campbell over-medicated him from October 12, 2007, until December 27, 2007. Plaintiff asks for monetary relief from Defendants.

## II.   Factual Findings

### A.   Hearing Testimony

#### 1.   Plaintiff Billy Culbertson

Plaintiff Culbertson testified that prior to his incarceration at the Jail, he was diagnosed with a mental health problem which involved mood swings, and that he was only fifty percent capable of taking care of himself. He was treated while at the Jail by Professional Counseling Associates (PCA), and Dr. Richard Flanigin, who prescribed him various mental-health medications. In October, 2007, he was prescribed Valproic Acid and Mirtazapine, which are both antidepressants, and in November, 2007, he was prescribed Depakote as a substitute for the Valproic Acid. However, Plaintiff claims that Defendants continued to dispense all three of the medications to him, resulting in an over-medication which caused him to enter a guilty plea to his state court criminal charges beyond his understanding.

Plaintiff admitted that both Valproic Acid and Depakote were prescribed to him and that the jailers who dispensed his medications followed the prescriptions when they submitted them to be filled. However, he claims that the jailers failed to note that Depakote was substituted for the Valproic Acid, and continued to give him both medications anyway. Plaintiff submitted a copy of the medication cards which shows at one point that Valproic Acid was crossed out, but that the entries of the jailers indicate that both medications were given. (Plaintiff's Ex. 2.) He also claimed the jailers were trying to kill him. Plaintiff admitted that he signed for the pills he took, but did not know at the time that he was not supposed to be taking all of them. He suffered side effects such as sleeping a lot, or not sleeping, headaches, and loss of vision. He claimed that he complained to jailers, but that the Jail had no grievance policy by which he could formally submit his complaints.

Plaintiff stated he was harmed because he accepted the plea agreement without understanding what he was doing.

Culbertson stated that when he was transferred to the ADC he underwent a full physical and the doctors prescribed him medications. He stated he was prescribed certain medications after his transfer to the Varner Unit, and other medications following a fight with another inmate. He also stated that while a psychiatrist he saw at the ADC took him off his medications, another doctor prescribed him Lithium.

Plaintiff testified that although Defendant Roberson did not distribute his medications, he was responsible for the conduct of his employees. He also stated that he was not suing Defendant Munnerlyn on the present remaining claim.

### 2. Christine Munnerlyn

Ms. Munnerlyn testified she resigned from the Jail on October 18, 2007, and that her last day of work there was about October 13 or 14, 2007. She admitted transporting Plaintiff on occasion to appointments at PCA, and stated that when she dispensed medications she followed the prescriptions, took the inmate's medications out of the blister packets and placed them in brown envelopes for distribution by the Jailers.

### 3. Samantha Campbell

Ms. Campbell is the Jail Administrator and took part in dispensing medications for the inmates. She explained that the prescriptions from the inmates' doctors are faxed to All Care Pharmacy, which then sends blister packs of the pills to the Jail. A card is created for each inmate with the inmate's name, the prescription name, and the number of blister packs and pills received. Pills are removed from the blister packs and placed in small brown coin envelopes for distribution

by the jailers. When the pills are dispensed, both the inmate and the distributing guard sign the card attached to the prescription, and the jailer watches as the inmate swallows the medication. An inmate may refuse to take his medication and such is recorded on the card by the jailer. Campbell testified she never knowingly gave Plaintiff medication which she knew he was not supposed to receive. She also explained that Plaintiff's medication card reflected that one of his medications was crossed out, and that meant that the doctor would have called them and they would have pulled the medication from distribution. Finally, Campbell stated that although the Jail did not have a written grievance procedure, inmates were given access to grievance forms (Defendants' Ex. 1).

### 4. Sheriff Jim Roberson

Sheriff Roberson testified that the Jail does not employ medical personnel, and that the Jail follows directions submitted by PCA with respect to the medical care of individual inmates. He did not remember talking with Plaintiff and did not believe Plaintiff received an overdose of medication, since the Jail Administrator testified that she followed the doctor's prescriptions. He never dispensed medications to inmates.

### 5. John Barta

Mr. Barta worked at the Jail during a portion of the Plaintiff's incarceration. He took part in distributing medications to inmates, had inmates sign for the pills, and watched them take the medications. He never decided if an inmate should or should not be receiving a medication, and distributed what was prescribed by the doctor.

### 6. Anthony Mahoney

Mr. Mahoney currently is incarcerated at the ADC. He was housed with Plaintiff at the Jail during part of the time at issue. He stated Plaintiff had problems at that time, was disoriented, and

complained that the jailers were trying to kill him. Some days Plaintiff would act okay and others he acted crazy, and mumbled a lot.

### 7. Jackie Deuerling

Ms. Deuerling is Plaintiff's sister, and visited him in the Jail. During that time, Plaintiff complained about receiving an overdose of medications and the day he went to court he was crazy and not capable of making the plea decision. She told his attorney Plaintiff needed to be at the hospital, and admitted that Plaintiff answered the Judge's questions about understanding the plea.

### 8. Shirley Culbertson

Ms. Culbertson, Plaintiff's mother, also visited him at the Jail. Often, she was not able to talk with him, because he did not make any sense. He never got better until he was transferred to EARU.

### 9. David Hankins

Mr. Hankins stated he may have been in court with Plaintiff on the day he submitted his plea and was sentenced, but he does not really recall any of the details.

## B. Exhibits

Defendants presented, for the Court's review, Plaintiff's Jail and medical records (Exhs. 2-4). In addition, pursuant to Plaintiff's request, the ADC provided the Court with a copy of Plaintiff's mental health records (Court Exh. 1).

## III. Legal Conclusions

It appears to the Court that at the time of the matters at issue, Plaintiff was incarcerated at the Jail as a pretrial detainee. While the due process standard of the Fourteenth Amendment applies to determine the constitutionality of pretrial detainees' conditions of confinement, the standards applied to such claims are the same as those applied to Eighth Amendment claims. See Bell v.

Wolfish, 441 U.S. 520, 535 (1979), and Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, supra, 132 F.3d at 1240.

As noted above, Defendants submitted to the Court copies of Plaintiff's medical records, which show that Dr. Flanigin prescribed to Plaintiff various combinations of medications while he was at the Jail. (Defendants' Exs. 3, 4, pp. 1-3.) According to records from All Care Pharmacy, Plaintiff was prescribed Mirtazapine on September 24, 2007, October 17, 2007, and November 7, 2007. (Defendants' Ex. 3, p. 61.) He also was prescribed Valproic Acid on September 24, 2007,

October 3, 2007, October 17, 2007, and October 31, 2007. Id. According to Dr. Flanigin's affidavit, he saw Plaintiff on November 14, 2007, at which time he recommended that he switch from Valproic Acid to Depakote Delayed Release, due to Plaintiff's complaints of nausea and gastric upsets. (Defendants' Ex. 4, p. 3.) In addition, the medication log on November 14, 2007, shows that Valproic Acid is marked out and lists Depakote and Remeron. Id. at p. 6.[1] A PCA entry found in Plaintiff's ADC mental health records shows that he was seen on November 14, 2007, at which time he reported a "medical adherence." (Court Ex. 1.)

The medication cards from the Jail do not clearly show whether Plaintiff received both Depakote and Valproic Acid from November 14, 2007, until December 27, 2007. (Plaintiff's Ex. 2.) However, the drug store receipts which are attached to these logs reflect prescriptions filled only for Depakote and Mirtazapine. Id.

The Court finds that Plaintiff Culbertson does not meet his burden of proof, by the preponderance of the evidence, to show that Defendants' actions in dispensing his medications were conducted with deliberate indifference to his serious mental health needs. His allegations against Defendant Roberson are based on his supervisory position only. However, supervisor liability is limited in § 1983 actions, and a supervisor cannot be held liable on a theory of respondeat superior for his or her employee's allegedly unconstitutional actions. See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). A supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward

---

[1] Mirtazapine is the generic name for the brand name, Remeron. *Remeron Information*, **DRUGS.COM,** http://www.drugs.com/remeron.html (last visited June 20, 2012).

the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993). In this case, Plaintiff does not allege any knowledge or personal involvement by Defendant Roberson in connection with the alleged over-medication incidents. In addition, he admits that he did not intend to sue Defendant Munnerlyn concerning these events. Finally, he provides no evidence that Defendant Campbell acted with deliberate indifference on the dates in which she dispensed his medications. At the most, accepting as true Plaintiff's claim of over-medication, he proves negligence, but such is insufficient to support an Eighth Amendment claim for relief. See Estate of Rosenberg v. Crandell, 56 F.3d at 37. [2]

---

[2]

In summarizing Plaintiff's ADC mental health records (Court Ex. 1), the Court notes that he continuously complained about not receiving the appropriate mental health medication after his transfer from the Jail. When he first arrived at the ADC, he was placed on Celexa, for depression, by Dr. Albert L. Kittrell, M.D. (Psychiatric Clinic Notes, January 23, 2008.) The Psychiatric Clinic notes for July 14, 2009, and October 13, 2009, reflect that he was prescribed Paxil and Lithium, by Dr. Kathryn Bowman, M.D. On January 5, 2010, Dr. Peter Edwards discontinued the Lithium and continued Plaintiff on Paxil. (Psychiatric Clinic Notes.) Dr. Edwards continued Plaintiff with this same drug regimen on January 21, 2010, despite Plaintiff's complaints about the discontinuance of Lithium. (Psychiatric Clinic Notes.) On April 1, 2010, Dr. Edwards switched Plaintiff to Effexor, but that was discontinued on May 6, 2010, after Plaintiff reported side effects. (Psychiatric Clinic Notes.) Dr. Edwards agreed to temporarily prescribe him Lithium on that date, but discontinued the Lithium on May 20, 2010. (Psychiatric Clinic Notes.) In the June 17, 2010 Psychiatric Clinic Notes, Dr. Edwards writes that Plaintiff "doesn't have a mental illness," but that he is "narcissistic" and "malingering."

Included in these records also are grievances in which Plaintiff complains about the ADC doctors taking him off the medications (grievances dated June 21, 2010). All of these records contradict his testimony in Court, where he used the fact that he was taken **off** mental health medication as evidence of Defendants' deliberate indifference in over-medicating him. Finally, when Plaintiff completed a social history upon his arrival at the ADC, he was asked to include any information about what happened to him while incarcerated at the Jail. He included the fact that he was treated by Dr. Flanigin and PCA and placed on several medications, but did not mention anything about having been over-medicated at the Jail. (M/H Social History.)

## IV. Conclusion

IT IS, THEREFORE, RECOMMENDED that Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 22nd day of June, 2012.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE